John P. Doherty
Michael P. De Simone
ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016-1387
Telephone:   212-210-9400
Facsimile:   212-210-9444

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

PIVOTAL PAYMENTS, INC., : Case Number: 11-CV-5713-SJF-ARL

                         Plaintiff,

    - against -

FVA VENTURES, INC. d/b/a VISALUS SCIENCES and
BLYTH, INC.

                       Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## DEFENDANT BLYTH, INC.'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION TO DISMISS

ALSTON & BIRD LLP

John P. Doherty
Michael P. De Simone
90 Park Avenue
New York, New York 10016
(212) 210-9400

*Attorneys for Blyth, Inc.*

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...........................................................................................1

PIVOTAL'S ALLEGATIONS ..............................................................................................1

ARGUMENT..........................................................................................................................3

CONCLUSION......................................................................................................................6

## PRELIMINARY STATEMENT

Blyth, Inc. ("Blyth") hereby moves to dismiss the Amended[1] Complaint ("Complaint") of Pivotal Payments, Inc. ("Pivotal"). Pivotal asserts a tortious interference with contract claim against Blyth that is facially deficient because Blyth is alleged to have interfered with a contract between Pivotal and ViSalus Sciences ("ViSalus"). The Complaint concedes that ViSalus is a Blyth subsidiary in which Blyth owns a 57.5% interest, and it is hornbook law that no claim for tortious interference lies for a corporate parent's alleged "interference" with the contract of a subsidiary. Moreover, as is set forth at greater length in the memorandum of law being filed contemporaneously by ViSalus, there was no valid contract between Pivotal and ViSalus. The Court, accordingly, should dismiss the tortious interference claim against Blyth with prejudice.

## PIVOTAL'S ALLEGATIONS[2]

Blyth is the parent company of ViSalus, owning fifty-seven and one-half percent (57.5%) of all shares in ViSalus. *See* Amended Complaint ("Complaint"), ¶ 32 ("Blyth owns 57.5% of ViSalus.");[3] *id* at. ¶ 3 (identifying Blyth as "the majority shareholder of ViSalus"). In other words, the relationship between Blyth and ViSalus is a parent-subsidiary relationship. *See id.* at ¶ 4.; *see also id.* at ¶ 11 (identifying Blyth as ViSalus' parent company).

The Complaint alleges that in 2006, Pivotal and ViSalus entered into a merchant processing agreement (the "MPA"). *Id.* at ¶ 10. Pursuant to its terms, the MPA was to be in effect until July 7, 2012, though it could be terminated early. *Id.* On April 7, 2011, ViSalus asked Pivotal to review and improve the fee structure outlined in the MPA and requested new pricing from Pivotal. *Id.* at ¶ 11. ViSalus informed Pivotal that one of the reasons it was seeking

---

[1] Pivotal filed a complaint and then amended it prior to service.
[2] ViSalus takes the allegations as pleaded in the complaint as true solely for purposes of this motion to dismiss.
[3] Blyth indirectly owns 57.5% of the shares of ViSalus, and has agreed to purchase all remaining shares of ViSalus by 2013. Declaration of John Tolmie, dated December 23, 2011, at ¶ 3.

1

an improved fee structure and requesting new pricing was because ViSalus was "transition[ing] ownership and control" to its "parent company," Blyth. *See id.*; *see also id.* at ¶¶ 15-16.

In August 2011, Pivotal sent ViSalus a draft merchant agreement for its review that contained new proposed pricing. *See id.* at ¶ 12-15. Pursuant to its unambiguous terms, the draft would "become effective on the date Bank executes this Agreement ('Effective Date'), provided however that if [ViSalus] submit[s] a transaction prior to the Effective Date, [ViSalus] will be bound by all terms of this Agreement." *See* Draft Merchant Agreement, section 13(A), Declaration of John Tolmie, dated December 23, 2011, at ¶ 2 & Exh. A.[4] Pivotal concedes that "ViSalus sent written notice to" it on September 28, 2011, and that ViSalus communicated in that notice that it was "revok[ing] its signature on" the draft. Complaint ¶ 24.

ViSalus tendered its written revocation of its signature before any contract could be formed. In the draft, "Bank" is defined as Harris, N.A., Tolmie Declaration Exh. A at p. 4/9, and there is a line for Harris, N.A.'s signature. *See id.* at p. 2/9. Pivotal alleges that it returned the draft to ViSalus executed, Complaint ¶ 20; the draft that Pivotal returned shows that it was not executed by Harris, N.A. Tolmie Declaration Exh. A at p. 2/9. Additionally, the Amended Complaint contains no allegation that ViSalus submitted any transactions "prior to the Effective Date," that could possibly have caused that draft agreement to have become effective. As a

---

[4] "While a Rule 12 motion is directed only to the sufficiency of the pleading, the court determining the motion may rightfully consider written documents attached to the complaint as well as documents incorporated thereto by reference and those of which plaintiff had knowledge and relied upon in commencing the action." *Statler v. Dell, Inc.*, 775 F. Supp. 2d 474, 481 (E.D.N.Y. 2011); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153-54 (2d Cir. 2002) (stating that it is appropriate to rely upon documents relied upon by the complaint, even if not incorporated by reference). ). Because Pivotal has indicated in the Complaint that it wishes to keep the draft merchant agreement confidential (in accordance with the provisions of the draft), ViSalus has redacted all provisions of the draft that are not directly relevant to its motion to dismiss.

2

result, the draft never became a binding contractual agreement. *See* Draft Merchant Agreement, section 13(A).

## ARGUMENT

To avoid dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (abrogating *Conley v. Gibson*, 355 U.S. 41 (1957)). Legal conclusions are not entitled to a presumption of truth, and the Court should disregard conclusory allegations or legal characterizations cast in the form of factual allegations. *Id.*

Pivotal alleges that Blyth tortiously interfered with "a valid and enforceable contract between Pivotal and ViSalus." Complaint ¶¶ 32-36. Under New York law, the elements of a tortious interference claim are "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom." *E. End Eruv Ass'n, Inc. v. Vill. of Westhampton Beach*, No. CV 11–0213, 2011 WL 6156802, at *13 (E.D.N.Y. Nov. 3, 2011) (quoting *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 726 F. Supp. 2d 291, 304 (S.D.N.Y. 2010)). Importantly, "[i]t is well established that <u>only a stranger to a contract</u>, such as a third party, can be liable for tortious interference with a contract." *Koret, Inc. v. Christian Dior, S.A.*, 161 A.D.2d 156, 157, 554 N.Y.S.2d 867, 869 (1st Dep't 1990) (emphasis added); *see also IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d 395, 407 (S.D.N.Y. 2009) ("[A] claim for tortious interference will lie only against a stranger who improperly interferes with a contract between two contracting parties.").

3

As a result, a "corporate parent . . . ha[s] a right to interfere with the contract of its subsidiary in order to protect its economic interests . . . ." *Koret, Inc.*, 161 A.D.2d at 157, 554 N.Y.S.2d at 869; *see also MTI/The Image Grp., Inc. v. Fox Studios E., Inc.*, 262 A.D.2d 20, 23, 690 N.Y.S.2d 576, 579 (1st Dep't 1999) ("It was also error not to dismiss the third cause of action, for tortious interference with contractual relations . . . since all the named companies are affiliated with Morning Studio, either as parent or sister companies, and thus had an economic interest" in the contract); *Primetime 24 Joint Venture v. Echostar Commc'ns Corp.*, No. 98 CIV 6738, 2002 WL 44133, at *8 (S.D.N.Y. Jan. 11, 2002) (holding that a parent company, as a matter of law, could not interfere with the contract of its subsidiary); *Hirsch v. Food Res., Inc.*, 24 A.D.3d 293, 297, 808 N.Y.S.2d 618, 622 (1st Dep't 2007) (holding that majority owner of a company's stock was "an owner with an economic interest" thus was not liable for tortious interference with that company's contract).

To fall within an exception to this economic interest rule, the defendant must "adequately allege that the defendant either acted maliciously, fraudulently, or illegally." *IMG Fragrance Brands, LLC.*, 679 F. Supp. 2d at 406; *see also Exportaciones Del Futuro S.A. de C.V. v. Iconix Brand Grp. Inc.*, 636 F. Supp. 2d 223, 231 (S.D.N.Y. 2009) ("Under New York law, 'the imposition of liability in spite of defense of economic interest requires a showing of either malice on the one hand, or fraudulent or illegal means on the other.'") (quoting *Foster v. Churchill*, 87 N.Y.2d 744, 642 N.Y.S.2d 583 (1996)). It is well-settled that "bare allegations of malice" are insufficient to bring the tortious interference claim "under an exception to the economic interest rule." *IMG Fragrance Brands, LLC*, 679 F. Supp. 2d at 406 (quoting *Rather v. CBS Corp.*, 68 A.D.3d 49, 60, 886 N.Y.S.2d 121, 128 (1st Dep't 2009)). For example, simply alleging that the corporate parent acted "without justification," *see* Complaint ¶ 35, is inadequate

4

as a matter of law. 679 F. Supp.2d at 406. Furthermore, these types of bare allegations are particularly insufficient when the plaintiff also alleges that the corporate parent's actions were financially motivated. *Id.* (citing *Ruha v. Guior*, 277 A.D.2d 116, 116, 717 N.Y.S.2d 35, 36 (1st Dep't 2000)). Therefore, a claim of tortious interference brought against a corporate parent based on its alleged tortious interference with the subsidiary's contract when there are no legally sufficient allegations that the corporate parent acted by malicious, fraudulent, or illegal fails as a matter of law and should be dismissed pursuant to Rule 12(b)(6). *See id.*; *MTI/The Image Grp., Inc.*, 262 A.D.2d at 23, 690 N.Y.S.2d at 579.

ViSalus is a subsidiary of Blyth, with Blyth owning 57.5% of the shares of ViSalus' stock. Complaint ¶ 4. As a result, Blyth has a legally recognized "economic interest" in ViSalus' contracts. *See Hirsch*, 24 A.D.3d at 297, 808 N.Y.S.2d at 622. The tortious interference claim brought against Blyth is based on an alleged contract between ViSalus and Pivotal. *See* Complaint ¶ 33. Specifically, Pivotal alleges that Blyth interfered with "the contract between Pivotal and ViSalus" by "induc[ing] ViSalus' breach and wrongful termination of the contract improperly and without justification." *Id.* at ¶¶ 34, 35; *see also id.* at ¶ 36. In the Complaint, Pivotal does not set forth any sufficient allegations that Blyth acted by malicious, fraudulent, or illegal means. *See Id.* ¶ 35 (merely alleging that Blyth acted "improperly and without justification"). In fact, Pivotal's allegations demonstrate that Blyth's motivations were purely financial. *See, e.g., id.* at ¶ 11. Therefore, based on Blyth's economic interest in the contract between ViSalus and Pivotal by virtue of Blyth's stock ownership in ViSalus and its status as ViSalus' parent company, Blyth had – and continues to have – a "right to interfere"

5

with ViSalus' contracts. *Koret, Inc.*, 5161 A.D.2d at 157, 54 N.Y.S.2d at 869. As a result, the tortious interference claim against Blyth should be dismissed as a matter of law.[5]

## CONCLUSION

For the foregoing reasons, Pivotal's claim against Blyth should be dismissed with prejudice.

Dated: New York, New York
December 22, 2011

          Respectfully submitted,

          ALSTON & BIRD LLP

By:   /s/ Michael P. De Simone
      John P. Doherty
      Michael P. De Simone
      90 Park Avenue
      New York, New York 10016
      (212) 210-9400

*Attorneys for Blyth, Inc.*

---

[5] Additionally, Pivotal claims that Blyth tortiously interfered with a contract allegedly agreed to in September 2011. As is discussed at greater length in the motion to dismiss that ViSalus is filing contemporaneously herewith, Pivotal does not allege the breach of a valid contract between Pivotal and ViSalus. It follows that this is an additional reason why there can be no valid tortious interference claim against Blyth. *See E End Eruv Ass'n, Inc.*, 2011 WL 6156802, at *13 (stating that an essential element for a tortious interference claim is "the existence of a valid contract").